SHELBY MUTUAL CASUALTY CO. OF SHELBY, OHIO, v. RICHMOND et al.

No. 30, Docket 21700.

United States Court of Appeals Second Circuit.

Submitted Oct. 10, 1950.

Decided Dec. 14, 1950.

804

Alcorn, Bakewell & Alcorn, Hartford, Conn., Hugh Meade Alcorn, Jr., and Henry P. Bakewell, Hartford, Conn., for appellant.

Maxwell & Dully, Hartford, Conn., Leo Gaffney, New Britian, Conn., and Warren Maxwell, Hartford, Conn., for William Richmond, Defendant-Appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On December 7, 1945, and for some time prior thereto, the defendant Fiedorczyk operated a garage and in connection therewith sold used cars. Prior to December 7, 1945, the defendant Fiedorczyk purchased a policy of limited garage liability insurance from Shelby Mutual Casualty Company of Shelby, Ohio, the plaintiff herein. That policy provided protection only for Fiedorczyk personally, or for his duly authorized agent when operating an automobile in connection with the business of the garage.

On December 7, 1945, and while the garage liability insurance policy was in force, Fiedorczyk sold a used car for $200 to one Michael Albino. The sale was completed on December 7, and Albino took delivery of the car. About a week later, Albino paid $100 still remaining due on the purchase price. He had some difficulty with the starter mechanism of the car and brought it back to Fiedorczyk to have the starter repaired. Fiedorczyk undertook these repairs, completed the job and, on the afternoon of December 27, 1945, returned the car to Albino. Later on the afternoon of that day Albino, while driving the car, struck and injured the defendant Richmond in Plainville, Connecticut. Albino had no insurance to cover this accident. At the time of the accident, he was on an errand of his own, which had nothing to do with the business of Fiedorczyk. Subsequently, Albino and Fiedorczyk conspired to cook up a story whereby Fiedorczyk's garage liability insurance would cover the operation of the car by Albino.

Richmond brought suit against Fiedorczyk in the Superior Court for Hartford County, Connecticut. The insurance company furnished attorneys to defend the action on behalf of Fiedorczyk, as required by the policy, but notified Fiedorczyk that the case was handled under a reservation of rights and that it would pay no judgment rendered. It also notified Richmond's counsel and the judge presiding over the action in the Superior Court that the case was handled under a reservation of rights and that no judgment rendered would be paid by it. The court rendered judgment in favor of Richmond against the defendant Fiedorczyk in the amount of $14,500. This judgment the insurance company refused to pay, and thereafter brought this action in the United States District Court for the District of Connecticut to determine its liability under the insurance policy. The trial court found that under the facts as they now appear there was no coverage but held that the insurance company was collaterally estopped from relitigating the facts. The court also found that there was a lack of the cooperation required by the policy, but held the insurance company estopped to raise this defense against Richmond because it had withheld material evidence concealed by its counsel which, if disclosed, would have made it plain to Richmond's attorney that the burden and expense of the action against Fiedorczyk were useless.

■ 1. As to coverage, Richmond argues that since facts which would show coverage of the insured were established in the previous litigation between the in-

sured represented by the insurance company's counsel on the one side, and Richmond on the other, the insurance company should be prevented, by the rules of collateral estoppel, from relitigating those facts. It is true that the Connecticut courts have recognized the general principle that one who controls litigation in his own interest is bound as to facts litigated even though he was not a party to the proceeding. Courts in other jurisdictions have applied this general rule to an insurance company which defends an action for its insured, apparently without regard to whether or not the company was required to do this by the policy. But the insurance company contends that where, as in the present case, it reserved its rights the Connecticut courts have held that collateral estoppel may not be asserted by the injured party against the insurance company. An analysis of the Connecticut decisions cited does not make this altogether clear. In Rochon v. Preferred Accident Ins. Co., 118 Conn. 190, 171 A. 429, it was held that the injured party may not assert *res judicata* against the insurance company until he has shown that the party whom he sued in the first action was covered by the insurance policy, for until then it could not be said that the relationship of insured and insurer existed, and that the insurance company was in privity with the defendant in the first action. It does not appear in this opinion that the insurance company defended the first action, or that the injured party sought to invoke the doctrine of *res judicata* on that ground, or even that all the facts going to coverage were previously litigated. More in point is the case of Manthey v. American Automobile Ins Co., 127 Conn. 516, 18 A.2d 397. There the insurance company did defend the first action, under a reservation of right. The unsuc-

cessful defendant in that prior action, who contended he was insured, sued the company and argued that on the issue of coverage it was bound by facts litigated in the previous action, in which it had participated. The court ruled that the company had not waived its right to assert non-coverage, because it had made a timely reservation of its rights. The court also held that the insurance company was not bound on the issue of coverage by the litigation in the first action. As we read the opinion, the reason for the latter ruling was the absence of any adversary proceeding between the insurance company and the insured in the first action; no "issue" as to facts going to coverage was litigated in the prior action between the insurance company and the person claiming to be insured, for the litigation was between them on one side and the injured party on the other. Compare Restatement of Judgments §§ 82, 84, Comment h. Nevertheless the language used in Manthey v. American Ins. Co., supra, was not as clear as it might be, and it is possible that the court had some more sweeping prohibition in mind, and the trial judge seems to have taken that view of the decision. Whatever the meaning of the language used, it cannot be said that the Connecticut courts have conclusively held that an injured party may not assert collateral estoppel against an insurance company which had controlled the defense in the prior litigation after reservation of its rights. In our view of the case, however, we need not pass on this question, nor on the possible effect of the language used in the Connecticut subrogation statute,[1] under which Richmond is here claiming.

■ 2. Even if the insurance company should lose on its defense of non-coverage, yet Richmond may not recover if the com-

[1]. Section 4231 of the General Statutes of the State of Connecticut, Revision of 1930, provides in part as follows:

"Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment shall not be satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

pany succeeds in its second defense of non-cooperation.

The court below held that Fiedorczyk neglected to cooperate with the insurance company, as required by the policy, through concealing from the company his false report to the Connecticut Motor Vehicle Department that he was the owner of the car at the time of the accident and also through executing a bill of sale of the car to one Cavanaugh when as a matter of fact the car did not then belong to the insured, but to Albino. These facts were not disclosed to the company until late in the progress of the trial in the Connecticut State Court.

The trial judge in the principal case stated that there was a partial waiver of the defense of non-cooperation when Fiedorczyk on January 3, 1946, made known his cooked-up story to the company's agent, but said that there could be no waiver of any defense arising out of his concealment of the statement to the Connecticut Motor Vehicle Department or out of the deed of the car to Cavanaugh, for the company had no knowledge of the existence of those documents. The judge added that: "This concealment would ordinarily be sufficient ground for a defense of non-cooperation * * * for the statements seriously affected its position in defense or settlement of Richmond's claim." He further said, however, that even though there could be no waiver as to those statements, the company was in no position to make use of the non-cooperation defense, for its conduct in concealing the conspiracy, particularly after testimony at the trial disclosed the existence of the two documents, led Richmond through a long and expensive course of litigation which could have been avoided by abandonment or settlement of the claim but for its effort to suppress the facts. In accordance with this theory, the trial judge made the following findings of fact:

"35. Plaintiff Shelby concealed from Richmond, throughout the trial in Superior Court, the evidence of the conspiracy in its hands.

"36. Richmond was induced to continue his litigation by the failure of Shelby to reveal that evidence."

Shelby argues that Finding 36 is not supported by the record. Richmond's attorney did not testify in this proceeding, and the finding that he was induced by Shelby to continue the litigation was presumably inferred from all the evidence of what took place. The inference, however, is very inconclusive. Had the insurance company put its agents on the stand to testify to the "cooked-up story" which Fiedorczyk had initially told them, the jury might nevertheless have chosen to disbelieve them and, in the light of the conflicting evidence, find Fiedorczyk liable. Indeed, in his brief Richmond's attorney himself suggests that he might still have chosen to go to the jury on the basis of the evidence in his hands. We are not even convinced that the introduction of evidence by the insurance company's agents of the "cooked-up story" would have strengthened the defense against Richmond, for the public documents filed by Fiedorczyk, which were all against his own apparent interest, would seem to have been far stronger proof against him than anything the insurance company could have offered by way of explanation. We do not believe that the failure to offer evidence as to the "cooked-up story", when so much stronger evidence was on Richmond's side, induced Richmond to continue his litigation, and we reject Finding 36 as unfounded.

But even if Finding 36 should be regarded as substantiated, it does not follow that Richmond is entitled to the relief accorded him in the court below. The trial judge, in support of his position, referred to Goergen v. Manufacturers Casualty Ins. Co., 117 Conn. 89, 166 A. 757. In that case an insurance company defended its insured without filing a reservation of rights, either before the trial, or after the trial had commenced, upon learning that the insured was not cooperating. In a subsequent action by the injured party against the insurance company, it was held that the company had waived its defense of non-cooperation apparently because, by its conduct, it had held itself out to the injured party as willing to pay the judgment, and because as a result of those representations

the injured party had continued his suit against the insured.

The facts here are quite different. Before defending the suit against Fiedorczyk, Shelby notified Richmond that it would not pay any judgment against Fiedorczyk, and at no time afterwards did it hold itself out to Richmond as so willing. We need not concern ourselves with the precise terms of the letter of reservation to Fiedorczyk or with the latter's understanding of it, for it is the effect of Shelby's conduct on Richmond with which we are concerned. It is true that the Connecticut courts intimated that even a reservation of rights may sometimes be ineffective to prevent a waiver if the insurance company performed acts which were inconsistent with the reservation.[2] But here Shelby had not acted in a way that was inconsistent with its reservation of rights, for the most that can be said against Shelby is that it induced Richmond to continue the suit against the insured by conducting a weaker defense than might have been interposed for Fiedorczyk. It never intimated that its own defenses had been abandoned, and never in fact conducted a defense that can be regarded as negligent.

The effect of the judge's decision was practically to do away with the defense of non-cooperation merely because Shelby was thought to have defended the case against Fiedorczyk in a way weaker than might have been employed. We do not believe that this was a ground for an estoppel where it was perfectly clear to Richmond that Shelby did not intend to pay any judgment against Fiedorczyk. We, therefore, hold that the insurance company did not by its conduct of the Connecticut trial after it had first learned of Fiedorczyk's earlier non-cooperation waive that defense or estop itself from asserting it.

Judgment of the trial court reversed with directions to enter judgment for the plaintiff.

2. See Basta v. United States Fidelity & Guaranty Co., 107 Conn. 446, 140 A. 816, 818.