McCREADY v HOFFIUS

BAIZ v HOFFIUS

Docket Nos. 185152, 185314. Submitted October 15, 1996, at Lansing. Decided March 7, 1997, at 9:20 A.M. Leave to appeal sought.

Kristal McCready and Keith Kerr brought an action in the Jackson Circuit Court against John and Terry Hoffius, alleging that the defendants violated the Civil Rights Act, MCL 37.2502(1); MSA 3.548(502)(1), when they refused to rent an apartment to the plaintiffs on the basis that the plaintiffs were unmarried but intended to reside together. The court, Edward J. Grant, J., granted summary disposition for the defendants, finding that the Civil Rights Act protected status, not conduct, that unmarried cohabitation was unprotected conduct, and not protected marital status, and, therefore, that the act did not protect unmarried cohabitation. The plaintiffs appealed. (Docket No. 185152).

Rose Baiz and Peter Perusse also brought an action in the Jackson Circuit Court against John and Terry Hoffius, alleging the same violation. The court, Alexander C. Perlos, J., granted summary disposition for the defendants for reasons similar to those relied on by Judge Grant. The plaintiffs appealed. (Docket No. 185314). The appeals were consolidated.

The Court of Appeals *held*:

1. The Legislature manifested its intent to prohibit discrimination based on whether a person is married by including marital status as a protected class under the Civil Rights Act.

2. The state's public policy favors the institution of marriage. Unmarried cohabitation is a misdemeanor under MCL 750.335; MSA 28.567. Because the Legislature did not intend the Civil Rights Act to insulate criminal conduct, unmarried cohabitation is not protected conduct under the Civil Rights Act.

3. Although the Civil Rights Act prohibits discrimination based on marital status, the act is not violated where a landlord refuses to rent to unmarried persons who would be engaging in criminal unmarried cohabitation.

Affirmed.

CIVIL RIGHTS — MARITAL STATUS — DISCRIMINATION — CRIMINAL LAW — UNMAR-
RIED COHABITATION.

The Civil Rights Act, by including marital status as a protected class,
is intended to prohibit discrimination based on marital status; the
act is not intended to insulate criminal conduct and is not violated
where a landlord refuses to rent to unmarried persons who would
be engaging in criminal unmarried cohabitation; unmarried cohabi-
tation is not protected conduct under the Civil Rights Act (MCL
37.2502[1], 750.335; MSA 3.548[502][1], 28.567).

*Fleming & Fleming, P.C.* (by *James B. Fleming*
and *Anne D. Fleming*) (*Jerrold Schrotenboer*, of
Counsel), for the plaintiffs.

*LaFlamme & Mauldin, P.C.* (by *Richard N.
LaFlamme*), for the defendants.

Amici Curiae:

*Rudolph A. Serra and Thomas F. Coleman*, for
Spectrum Institute, Triangle Foundation of Michigan,
and American Association of Personal Privacy.

*Goldbaum, Gattorn & Stancato, P.C.* (by *Henry
Stancato*), for Fair Housing Center of Metropolitan
Detroit, Jackson County Fair Housing Center, Fair
Housing Center of Greater Grand Rapids, Tri County
Fair Housing Center, Muskegon Area Fair Housing
Center, Fair Housing Center of Washtenaw County,
American Civil Liberties Union of Michigan, and
Michigan Protection and Advocacy Service.

Before: CORRIGAN, P.J., and TAYLOR and D. A. JOHN-
STON*, JJ.

CORRIGAN, P.J. In these consolidated appeals, plain-
tiffs appeal by right the orders granting summary dis-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

position to defendants in this fair housing action. We affirm.

Defendants John and Terry Hoffius, a married couple, rent residential property in Jackson, Michigan. In June 1993, plaintiffs Kristal McCready and Keith Kerr contacted defendants in response to defendants' advertisement about housing for rent. Defendants refused to rent to plaintiffs when they learned that McCready and Kerr were not married but intended to live in the same rental unit. Similarly, plaintiff Rose Baiz telephoned defendants in July 1993 about the property. Defendants also declined to rent to Baiz when they learned that she was not married to plaintiff Peter Perusse yet planned to live with him. Defendant John Hoffius told plaintiffs that unmarried cohabitation violated his religious beliefs.

Plaintiffs filed two separate complaints with the Jackson Fair Housing Commission. Testers from the commission posed as potential renters and contacted defendants. Defendants did not ask the marital status of all the testers. Defendants, however, refused to permit unmarried testers to inspect the apartments, claiming that the units only were available to married couples. Defendants stated that they usually did not rent to unmarried couples.

Plaintiffs filed two separate actions in circuit court. Defendants moved for summary disposition of plaintiffs' complaints, arguing in part that plaintiffs failed to state a claim upon which relief could be granted because the Civil Rights Act, MCL 37.2502(1); MSA 3.548(502)(1), did not protect unmarried cohabitation. Defendants also argued that, if the Civil Rights Act protected unmarried cohabitation, it was unconstitutional because it would force defendants to violate

their sincerely held religious beliefs against unmarried cohabitation.

The cases were heard separately, but decided similarly. Both circuit court judges opined that the cases involved statutory interpretation, and both declined to address the constitutional issues. The judges noted that the Civil Rights Act protected status, not conduct. They opined that unmarried cohabitation was unprotected conduct, not protected marital status. Accordingly, they determined that the Civil Rights Act did not protect unmarried cohabitation. We agree.

Plaintiffs first assert that defendants violated the Civil Rights Act by discriminating against them on the basis of their marital status. Whether unmarried cohabitation enjoys protection from housing discrimination under the Civil Rights Act is an issue of first impression in this state. Cases from other jurisdictions reflect divergent opinions on this issue. For example, in *Smith v Fair Employment & Housing Comm*, 12 Cal 4th 1143; 51 Cal Rptr 2d 700; 913 P2d 909 (1996), cert pending, the landlord presented arguments similar to those of defendants in this case. The California Supreme Court ruled that the California Fair Employment and Housing Act protected unmarried cohabitants against housing discrimination and rejected the landlord's argument that the unmarried tenants' sexual conduct, rather than their marital status, was at issue. *Id.* 1155-1161. See also *Swanner v Anchorage Equal Rights Comm*, 874 P2d 274 (Alas, 1994), cert den 513 US 979; 115 S Ct 460; 130 L Ed 2d 368 (1994); *Attorney General v Desilets*, 418 Mass 316; 636 NE2d 233 (1994), both of which held in accordance with *Smith*.

In contrast, the Supreme Court of Wisconsin decided that a landlord's refusal to rent to unmarried tenants was based on their conduct of living together and not on their marital status in *Dane Co v Norman*, 174 Wis 2d 683, 691; 497 NW2d 714 (1993). The Minnesota Supreme Court considered that state's criminal fornication statute when deciding this same issue in *State by Cooper v French*, 460 NW2d 2 (Minn, 1990). The court concluded that the Minnesota Human Rights Act did not extend to protect unmarried, cohabiting couples in housing cases. *Id.* at 7. The court added:

> Before abandoning fundamental values and institutions, we must pause and take stock of our present social order: millions of drug abusers; rampant child abuse; a rising underclass without marketable job skills; children roaming the streets; children with only one parent or no parent at all; and children growing up with no one to guide them in developing any set of values. How can we expect anything else when the state itself contributes, by arguments of this kind, to further erosion of fundamental institutions that have formed the foundation of our civilization for centuries? [*Id.* at 11.]

Whether the Civil Rights Act protects unmarried cohabitants from housing discrimination raises questions of statutory interpretation. Statutory interpretation is a question of law, which we review de novo. *Ballard v Ypsilanti Twp*, 216 Mich App 545, 549; 549 NW2d 885 (1996). When courts construe statutory meaning, their primary goal is to ascertain and give effect to legislative intent. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993), *State Treasurer v Schuster*, 215 Mich App 347, 351; 547 NW2d 332 (1996). This Court first considers the

specific statutory language to determine the intent of the Legislature. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993); *Mino v McCarthy*, 209 Mich App 302, 304-305; 530 NW2d 779 (1995). The Legislature is presumed to intend the meaning that the statute plainly expresses. *In re Austin Estate*, 218 Mich App 72, 75; 553 NW2d 632 (1996). Judicial construction of a statute is not permitted where the plain and ordinary meaning of the language is clear. *Id*. at 76.

MCL 37.2502(1); MSA 3.548(502)(1) provides in relevant part:

> (1) A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of religion, race, color, national origin, age, sex, familial status, or marital status of a person or a person residing with that person:
>
> (a) Refuse to engage in a real estate transaction with a person.

The Civil Rights Act does not define the term "marital status." In defining a term, courts should attempt to give effect to the legislative intent. *Miller v C A Muer Corp*, 420 Mich 355, 362; 362 NW2d 650 (1984). The purpose of the Civil Rights Act is to prevent discrimination based on membership in certain classes and to "eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Id*. at 363. "By including marital status as a protected class, the Legislature manifested its intent to prohibit discrimination based on *whether* a person is married." *Id*. (emphasis in original).

The public policy of this state, as reflected in our laws, favors the institution of marriage. Under Michi-

gan's Penal Code, unmarried cohabitation remains a misdemeanor. MCL 750.335; MSA 28.567 provides:

> Any man or woman, not being married to each other, who shall lewdly and lasciviously associate and cohabit together, and any man or woman, married or unmarried, who shall be guilty of open and gross lewdness and lascivious behavior, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 1 year, or by fine of not more than $500.00. No prosecution shall be commenced under this section after 1 year from the time of committing the offense.

When promulgating new laws, the Legislature is charged with the knowledge of existing laws on the same subject and is presumed to have considered the effect of new laws on existing laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993); *Schuster, supra* at 351-352. The Legislature presumably was aware that the above statute criminalized lewd and lascivious cohabitation. Because the Legislature would not have intended the Civil Rights Act to insulate criminal conduct, unmarried cohabitation is not protected conduct under the act. See also *Michigan Gaming Institution, Inc v State Bd of Ed*, 211 Mich App 514, 520-522; 536 NW2d 289 (1995) (CORRIGAN, J., dissenting). Our Supreme Court adopted this dissent in its later opinion that reversed the opinion of the Court of Appeals, 451 Mich 899 (1996). Although courts are to construe liberally remedial statutes, *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 77; 503 NW2d 645 (1993), we decline to recognize the Civil Rights Act as preventing housing discrimina-

tion against unmarried couples and at the same time legitimizing criminal conduct.[1]

Further, if two statutes lend themselves to a construction that avoids conflict, that construction should control. *House Speaker, supra* at 568-569. The construction should give effect to each statute without repugnancy, absurdity, or unreasonableness. *Michigan Humane Society v Natural Resources Comm,* 158 Mich App 393, 401; 404 NW2d 757 (1987). Our construction avoids conflict between the Civil Rights Act and the criminal cohabitation statute. The Civil Rights Act prohibits discrimination against couples who enjoy marital status, but the act is not violated when a landlord refuses to rent to unmarried persons who would be engaging in criminal unmarried cohabitation.

When a prior and a subsequent act relate to the same subject, courts presume against repeal of the former statute by implication. If possible, courts give effect to both acts. *Attorney General v Public Service Comm,* 161 Mich App 506, 513; 411 NW2d 469 (1987). The intent to repeal must appear clearly, and the party claiming an implied repeal has a heavy burden. Repeal may be inferred: (1) when a subsequent legislative act clearly conflicts with a prior act, or (2) when a subsequent act clearly is intended to occupy the entire field covered by a prior enactment. *House Speaker, supra* at 563.

Plaintiffs have not met their heavy burden of demonstrating that the Legislature intended to repeal the criminal cohabitation statute. Had the Legislature

---

[1] Note that the court in *Smith v Fair Employment & Housing, supra,* acknowledged that it was not burdened by a statute that criminalized private sexual conduct between consenting adults. *Smith, supra* at 1159.

intended to repeal the criminal cohabitation statute, it would have done so. Plaintiffs have not produced a subsequent legislative act that clearly conflicts with the criminal cohabitation statute, nor have plaintiffs demonstrated a subsequent act that the Legislature clearly intended to occupy the field covered by the criminal cohabitation statute. Making social policy is a job for the Legislature, not for this Court. *In re Kurzyniec Estate*, 207 Mich App 531, 542-543; 526 NW2d 191 (1994). Indeed, the appropriate branch for resolution of the moral issue presented is the legislative branch, which is well equipped to weigh these issues.

Plaintiffs next contend that society's need to provide equal access in housing outweighs defendants' religious beliefs that they should not rent to an unmarried couple. Neither trial court addressed this issue in its opinion; therefore, the issue is not preserved for review. *Bowers v Bowers*, 216 Mich App 491, 495; 549 NW2d 592 (1996). Additionally, our Supreme Court has refused to reach constitutional claims that are unnecessary to the resolution of a case. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). We decline to review this unpreserved issue, and we will not reach the constitutional issue because it is unnecessary in deciding this matter. *Northgate Towers Associates v Royal Oak Charter Twp*, 453 Mich 959 (1996).

Plaintiffs next argue that this Court should permit plaintiffs to amend their pleadings. Plaintiffs did not raise this issue before the trial courts. Accordingly, the issue is not preserved for review, and we decline to discuss it. *Vander Bossche v Valley Pub*, 203 Mich

App 632, 641; 513 NW2d 225 (1994); *Adam v Sylvan Glynn Golf Course,* 197 Mich App 95, 98; 494 NW2d 791 (1992). Moreover, our disposition of the preceding issues makes this issue moot.

Affirmed.